Argued June 28, decided July 11, 1911.

## BUHL MALLEABLE CO. *v*. CRONAN.

[117 Pac. 317.]

ATTORNEY AND CLIENT—AUTHORITY—EVIDENCE—ADMISSIBILITY.

1. Where a defendant testified to an agreement made with an attorney of plaintiff, and the attorney in rebuttal testified that he did not represent to defendant that he had authority to make the contract on behalf of plaintiff and stated that letters written by plaintiff constituted his only instructions received, the letters, showing that he was not authorized to consummate for plaintiff the contract relied on by defendant, were admissible to disprove previous authorization by plaintiff.

TRIAL—INSTRUCTIONS—REQUESTED INSTRUCTIONS—IGNORING ISSUES.

2. Where a party claimed commissions for selling merchandise for the adverse party, but the commissions were applied to an indebtedness due from a third person in reliance on an arrangement made with an attorney of the adverse party, whereby the party was to retain possession of the merchandise of the adverse party and continue to sell it, and the court charged that the party was in no event entitled to anything except the application of the profits, if any, that he made, the refusal to charge that the act of the adverse party in retaining the money paid amounted to ratification of the agreement was properly refused because it did not refer to the commissions, but to retaining the money, a part of which the adverse party was entitled to in any event.

TRIAL—INSTRUCTIONS—IGNORING ISSUES.

3. A requested instruction, which does not state all the facts bearing on the issue submitted, is properly refused.

TRIAL—INSTRUCTIONS—REFUSAL TO GIVE INSTRUCTIONS COVERED BY THE CHARGE GIVEN.

4. It is not error to refuse requested instruction covered by the general charge.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by the Buhl Malleable Company, a corporation, against John E. Cronan to recover money. The complaint stated in effect that between January 25, 1905, and May 1st of that year the defendant, having possession of certain of plaintiff's merchandise, sold a quantity thereof, valued at $1,031.91, and made some payments thereon, leaving due $724.78, which upon demand therefor he refused to pay and converted that sum to his own use. Judgment was demanded for $724.78 with legal interest from May 1, 1905.

The answer denied the material averments of the complaint and for a separate defense alleged in substance that prior to January 25, 1905, defendant was the secretary of the Western Mill Supply Company, a corporation which had in its possession certain goods for sale of the value of $6,343.50 consigned to it by plaintiff; that Messrs. Murdock and Moser, attorneys of Portland, who claimed to represent plaintiff, took possession of such merchandise and offered it to defendant if he would sell the same and from the commission arising therefrom pay

to plaintiff the indebtedness of the Western Mill Supply Company amounting to $628.83, in further consideration for which payment he was to have the agency in Portland and vicinity of plaintiff's goods; that relying on such representation, and believing them to be true, he accepted the offer, whereupon the attorneys delivered the goods to him which he commenced to sell; that he paid to plaintiff all the money received from the sale of such merchandise, including the commissions, but the sums so paid were credited on the indebtedness of the Western Mill Supply Company, and on April 1, 1905, plaintiff took possession of the remainder of the merchandise, valued at $5,498, delivered it to defendant's business rivals, and would not allow him to keep or perform the agreement, in consequence of the breach of which he had sustained damages in the sum of $2,623.71, giving the items thereof, and judgment was demanded therefor.

A reply having put in issue the allegations of new matter in the answer, the cause was tried, resulting in a verdict and judgment for plaintiff as demanded, and defendant appeals.                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Joel M. Long.*

For respondent there was a brief and oral arguments by *Mr. Gus C. Moser* and *Mr. W. A. Williams.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is maintained that errors were committed in admitting in evidence, over objection and exception, certain letters written by plaintiff to its attorneys in Portland respecting their demand, and in permitting, in the same manner, Gus C. Moser, one of the attorneys, to testify concerning such letters. In order to render the assignments of error comprehensive, it is proper to state the facts involved herein. About May, 1904, the defendant became a stockholder in a corporation known as the

Croffut-McAyeal Company, which about November 1st
of that year reincorporated as the Western Mill Supply
Company, when he was chosen its secretary and man-
ager.  An action was commenced against the latter cor-
poration, and on January 25, 1905, all property in its
possession was attached, except certain chains and other
hardware which had been shipped by plaintiff to the
Croffut-McAyeal Company and to its successor to be
sold on commission and the net proceeds arising there-
from to be accounted for monthly.  When the property
was attached, there was due plaintiff from the Western
Mill Supply Company on account of sales previously made
$628.83, and thereafter defendant without authority sold
a quantity of such chains.  About March 2, 1905, Mr.
Moser, having for collection the sum so stated, visited
the defendant, who delivered him a draft for $229.40,
which sum was credited on the indebtedness of the West-
ern Mill Supply Company, discharging all thereof except
the following items reported January 24, 1905: $156.14,
$118.71, $53.28, and $71.30.  The defendant on March
22d of that year also paid Moser $156.14, the amount
of the first item; April 12th following he paid the attor-
ney $124.58, the sum of the last two items; and on June
22, 1905, he paid the same person $118.71, the amount
of the second item after plaintiff had written him that
he would not be consigned any more merchandise for
sale.  Between January 25, 1905, and May 1st of that
year defendant sold quantities of plaintiff's merchandise
valued at $1,031.91 and made payments on account there-
of, leaving due $724.78.  Immediately upon the attach-
ment of the property of the Western Mill Supply Com-
pany, it became bankrupt, and, plaintiff's demand against
it of $628.83 having been duly established, the entire
dividend received therefrom was $50.30, which sum con-
stitutes a part of the payments for which credit was
given on defendant's account.

The defendant testified that about July 1, 1905, plaintiff took from him all its merchandise and delivered it to others, detailing the elements and amounts of damages sustained thereby, and stating that in consideration of his payment of the sum of $628.83 due from the Western Mill Supply Company, for the discharge of which he was not personally liable, Moser agreed with him, on behalf of plaintiff, that he should have the sole agency for the sale of its merchandise, and from the commissions which he might receive he stipulated to pay the old account.

Moser, as plaintiff's witness, testified in rebuttal that he never represented to defendant that he was authorized to enter into any contract on behalf of his client, and that the collection of its debt was the measure and extent of his authority. He admits, however, that he promised to recommend defendant to plaintiff as a suitable person as its agent and wrote a letter to that effect. In referring to certain letters received from plaintiff, Moser was permitted, over objection and exception, to state that they constituted the only correspondence and instructions received, whereupon the letters were received in evidence and an exception to their admission allowed. Nothing contained in such communications could be construed as authorizing Moser to enter into a contract with any person respecting the sale of its property.

Plaintiff's previous authorization, or its subsequent ratification of Moser's alleged acts with full knowledge thereof, would compel it to give defendant credit on account of the sales of its property which he effected after January 25, 1905, of the sums of money which he paid, if plaintiff failed to keep or perform the terms of the asserted agreement, and the amount of such payments would constitute a proper offset herein. The letters referred to showed that the attorney was never authorized to consummate for the plaintiff any agree-

ment respecting the agency for the sale of its property, and supplemented by Moser's testimony such letters and his sworn declarations were admissible as tending to disprove previous authorization, and hence no error was committed in these respects.

If the defendant was entitled to any counterclaim by reason of payment or for damage sustained in consequence of a breach of the alleged agreement, the right of recoupment would rest upon plaintiff's authorization or ratification of the attorney's alleged acts and representations with full knowledge thereof, on both of which branches the court gave ample instructions to the jury.

2. Requested instructions were refused to which action of the court exceptions were taken. Several of them are to the effect that if, from the evidence, the jury believed that Moser, assuming to act for plaintiff, induced defendant to pay the debt of the Western Mill Supply Company in consideration for which he was to retain possession of the merchandise and continue to sell it, and plaintiff with knowledge of such acts and conduct "retained" the money so paid, the keeping thereof amounted to a ratification.

If all the payments made by defendant were credited to his account, it would not have equaled the value of the goods which he sold after January 25, 1905. He was entitled to a commission for selling the merchandise, in speaking of which the court in its general charge, in referring to the averments of the answer, said:

"Therefore, under the issues here, in no event would the defendant be entitled to anything under this defense, except for the application, if any, that he made of the profits which were derived from the sale of this chain which was made by him after the date of this contract and before the sale was stopped."

As the requested instructions did not refer to the commissions, but related to retaining the money, a part of

which the plaintiff was entitled to in any event, no errors were committed in refusing to give the instructions.

3. Another requested instruction was denied and an exception taken. The request was, in substance, that if from the evidence the jury should find that plaintiff knew the defendant was in possession of and selling its merchandise, making reports to, ordering additional supplies from it, and paying money to Moser, who was remitting the same to plaintiff, the duty was imposed on the latter to ascertain by what authority the defendant was dealing with the attorney.

Whether or not the solicited instruction states the law applicable to the facts thus assumed we do not think it necessary to determine, for in our opinion the request does not detail all the circumstances from which a knowledge of the transaction as alleged in the answer might have been implied by plaintiff. The defendant's father was the attaching creditor, and, three days after causing the property of the Western Mill Supply Company to be seized in order to secure the payment of his demands against it, he wrote plaintiff, and from his letter the following extracts are made:

"I have taken charge of your consignment of chain because of the relations of my son with you and will protect your interest therein. * * It is the intention of my son to continue in the same line of business, and we would like to continue the handling of your chain."

The testimony shows that the defendant's father is financially responsible, and whether or not from this letter the plaintiff might reasonably have inferred that the writer would protect its interests and participate in the handling of its goods is not stated in the requested instruction, in refusing to give which no error was committed.

4. Other requested instructions were denied; but, deeming them covered by the general charge or immaterial, the judgment is affirmed.          AFFIRMED.